Estate of Achille F. Israel, Deceased, Leon Israel and City Bank Farmers Trust Company, Executors v. Commissioner.
Estate of Israel v. Commissioner
Docket No. 1757.
United States Tax Court
1944 Tax Ct. Memo LEXIS 10; 3 T.C.M. (CCH) 1301; T.C.M. (RIA) 44401; December 13, 1944
*10 Decedent created a trust under which, in the remote contingency of the death of the beneficiaries including those who would inherit under the laws of New York were the decedent to die intestate, the corpus would revert to decedent by failure of the trust. Held, that the value of the corpus of the trust at the time of his death is not includible in the gross estate of decedent. Decedent paid premiums on life insurance policies held in trust, by way of gifts to the trust for that purpose. Held, that the premiums so paid were not transfers made in contemplation of death under section 302 (c) of the Revenue Act of 1926 as amended. Josiah Willard, Esq., for the petitioners. Robert S. Garnett, Esq., for the respondent. TYSON Memorandum Findings of Fact and Opinion The respondent has determined a deficiency in estate tax against the estate of Achille F. Israel in the amount of $52,221.61, resulting, in part, from respondent's inclusion, under section 302 (c) and (g) of the Revenue Act of 1926 as amended, in decedent's gross estate of the amount of $297,944.56 as the value on the date of decedent's death, of certain policies of insurance transferred by the decedent in trust on *11 December 31, 1935. Other adjustments are not in controversy. The issues presented are: (1) Should the above mentioned amount of $297,944.56 be included in decedents gross estate; and, in the alternative, (2) should the sum of $16,811.40 representing premiums paid by the decedent within two years from the date of his death, on the insurance policies theretofore placed in trust, be included in the gross estate as transfers made in contemplation of death. This second issue was first raised by respondent in an amendment to his answer filed at the hearing. The proceeding has been submitted on the pleadings and a stipulation of facts. Such of those stipulated facts as are not set forth herein are included by reference. Findings of Fact The petitioners are the executors of the estate of Achille F. Israel, who died on January 18, 1939, when a citizen of the United States and a resident of Short Hills, New Jersey. The decedent died as a result of heart failure and "artery-sclerosis," being stricken shortly before his death. He was born April 1, 1888, and left surviving him, his widow and two children, Achille and Joanne, born, respectively, on March 29, 1924 and April 7, 1927. Under date *12 of September 15, 1932, the decedent entered into an agreement with the City Bank Farmers Trust Company, (hereinafter called the Trust Company), of New York City, New York, as trustee, whereby he constituted it custodian of policies of insurance having a face value of $343,051, and also constituted the Trust Company trustee of the proceeds of such policies. Under a reserved power to revoke or amend this agreement, the decedent, under date of December 31, 1935, made various amendments thereto, after reciting that he desired to amend the original agreement so as to irrevocably assign all the policies to the trustee. The trustee accepted the amendments. The trust instrument as amended appointed decedent's brother, Leon Israel, who survived decedent, as co-trustee with the Trust Company, and he accepted such appointment. It provided that when the word trustee was referred to in the trust instrument it was to be deemed as referring to both co-trustees. It provided further, as follows: "2. I hereby assign, transfer, set over and deliver to the Trustee all of my right, title and interest of every kind and nature in and to the policies described in Schedules A and B hereof, and the proceeds *13 thereof, and any sums which may at any time become payable thereunder, to have and to hold the same IN TRUST, nevertheless for the uses and purposes set forth in said agreement, as amended. * * * * *
"3. I hereby further amend said trust agreement by striking out, cancelling and annulling Article First of said agreement and by substituting in lieu thereof a new Article First which shall read as follows: - "ARTICLE FIRST "A. The insurance policies and the proceeds thereof listed in Schedule A shall constitute a separate trust fund to be designated as 'Trust Fund A', the income and principal of which shall be disposed of by the Trustee as follows: - I. To divide the principal of Trust Fund A into so many equal shares that there shall be one such equal share for each child of the Settlor who was in being on September 15, 1932, and to apply the income of each such share to the use of the child for whom such share was set apart. II. To pay over to each such child one-sixth of the principal of the share then held for him or her when he or she shall have attained the age of twenty-five years, if the Settlor is not then living; and to pay over to each such child one-fifth of the *14 principal of the share then held for him or her when he or she shall have attained the age of thirty years, if the Settlor is not then living; and to pay over one-quarter of the principal of the share then held for him or her when he or she shall have attained the age of thirty-five years, if the Settlor is not then living; and to pay over to each such child one-third of the principal of the share then held for him or her when he or she shall have attained the age of forty years, if the Settlor is not then living; and to pay over one-half of the principal of the share then held for him or her when he or she shall have attained the age of forty-five years, if the Settlor is not then living; and to pay over the balance of the principal of the share then held for him or her when he or she shall have attained the age of fifty years, if the Settlor is not then living. If any such child of the Settlor shall have attained the age of twenty-five years or upwards prior to the death of the Settlor, then upon the death of the Settlor to pay over to such child such proportion or the whole of the principal of the share set apart for such child as he or she would have received had he or she attained *15 such age after the death of the Settlor. III. Upon the death of any such child of the Settlor to pay over any principal then held for him or her hereunder to such child's descendants then living in equal shares per stirpes, or if none, to the Settlor's descendants then living in equal shares per stirpes, or if none, to the Settlor's brother, LEON ISRAEL, if he is then living, or if not, to those persons who would inherit property from the Settlor under the New York laws now in force and in the proportions therein provided if the Settlor then died intestate immediately after such time set for distribution, possessed of such property and a resident of the State of New York." "B. The insurance policies and the proceeds thereof listed in Schedule B shall constitute a separate trust fund, to be designated as 'Trust Fund B,' the income and principal of which shall be disposed of by the Trustee as follows: - I. To apply the income therefrom to the use of the Settlor's said wife, LILLIAN NORA FORD ISRAEL, during her life, and upon her death to divide and set apart the principal of Trust Fund B into so many equal shares that there shall be one such equal share for each child of the *16 Settlor then living and one such equal share for the descendants then living collectively of each then deceased child of the Settlor, and (a) To add the principal of each such share set apart for a child of the Settlor for whom a share of Trust Fund A is then held in trust, to the share of Trust Fund A held in trust for such child, and to dispose of the income and principal of the fund so added, as hereinbefore provided in Sub-division A with respect to the share to which such fund is added, Provided, However, that if the Settlor is not then living, and if any such child shall have attained the age of twenty-five years or upwards prior to the death of the Settlor's said wife, then upon her death to pay over such proportion of the share of said Trust Fund B set apart for such child as such child would have received under the provisions of Sub-division A of this Article First had he or she attained such age after the death of the Settlor's said wife, and to add the remaining principal of such share of said Trust Fund B to the share then held for such child under said Sub-division A. (b) To pay over the principal of the share of said Trust Fund B set apart for a child of the Settlor *17 for whom a share is not then held in trust under said Sub-division A of this Article First to such child. (c) To pay over the principal of each share set apart for the descendants collectively of a then deceased child of the Settlor to such descendants in equal shares per stirpes.
II. Upon the death of the Settlor's said wife, if no descendant of the Settlor is then living, to pay over the then principal of Trust Fund B to the Settlor's brother, LEON ISRAEL, if he is then living, or if not, to those persons who would inherit property from the Settlor under the New York laws now in force and in the proportions therein provided if the Settlor then died intestate immediately after such time set for distribution possessed of such property and a resident of the State of New York. III. Anything hereinbefore contained to the contrary notwithstanding, upon the death of the Settlor if the Settlor's said wife is then living, to pay over to her out of the principal of Trust Fund B the sum of $25,000., and three years from the date of the death of the Settlor to pay over to the Settlor's said wife, if she is then living, an additional sum of $25,000. out of the principal of Trust Fund *18 B." The trust instrument as amended also provided for a "Trust Fund C" covering other insurance policies. "Trust Fund C" is not here involved since the value of the policies therein was included in the gross estate because of decedent's retained right of revocation with special reference to that fund. The trust instrument as amended also contained the following provisions which applied only to policies embraced in Trust Funds A and B: "From and after the assignment to it of each policy of insurance at any time assigned to it as Trustee hereunder, said Trustee shall have, with respect to such policy, or any paid-up additional insurance purchased with annual dividends thereon, or any paid-up insurance, whether extended term or otherwise, received in the event of a surrender or lapse thereof, the sole right to exercise any and all of the benefits, rights, options and privileges of whatsoever kind appertaining to such policy, and may exercise the same, or refrain from exercising the same, at such time and in such manner as it may in its absolute discretion from time to time deem advisable, including but not by way of limitation, the right (1) to borrow thereon; (2) in the event of the *19 surrender or lapse of such policy, either (a) to receive the cash surrender value thereof, (b) to direct the purchase of non-participating paid-up life insurance, or (c) to continue the insurance for its face amount as paid-up extended term insurance; (3) to direct the disposition of the annual dividends on such policy. The Trustee shall direct that the dividends on such policies as are not fully paid up, be applied in reduction of the premiums on such policies. The Trustee is hereby expressly authorized and empowered to do and perform any and all acts and to make, execute and deliver any and all written instruments which it in its sole judgment may deem advisable in order that all the benefits, rights, options and privileges under the policies of insurance held by the Trustee hereunder from time to time shall be vested in the Trustee. "Wherever possible, the Trustee shall cause provision for automatic premium loans to be endorsed on the policies by the issuing companies. If at any time the Trustee believes that any policy assigned to it hereunder is likely to lapse by reason of the non-payment of any premium thereon, it is hereby expressly authorized and empowered, in its absolute *20 discretion, to make payment of such premium out of any funds then in its hands, and it is further authorized and empowered to borrow upon any policy or surrender the same for cash, or take any other steps which it may deem advisable in order to raise funds for the payment of any premium on any policy, but it shall be under no duty or obligation whatsoever to pay any such premium or to take any steps to raise funds for the payment thereof. * * * * *
"The Trustee shall incur no liability for any action taken by it, or for its omission to take any action, in the exercise of any of the benefits, rights, powers, options and privileges hereinabove conferred upon it, in good faith. The Settlor shall do and perform any and all acts, and make, execute and deliver any and all written instruments, which may be necessary in order to give full force and effect to the foregoing provisions." The trust instrument as amended provided further as follows: "ARTICLE SEVENTH With respect to the insurance policies listed in Schedule A: - The Settlor reserves no right either for himself or for any other person to amend or revoke the trust with respect to the life insurance policies listed in *21 Schedule A hereto annexed. With respect to the insurance policies listed in Schedule B: - During the life of the Settlor the Trustee shall have the power to terminate the trust in whole or in part with respect to the insurance policies listed in Schedule B hereto annexed and in the event of any such termination, such of the policies listed in said Schedule B, as to which the trust is thus terminated shall be transferred, paid over and delivered to the Settlor. The Trustee may at its own option terminate or refuse to terminate the trust with respect to the policies listed in said Schedule B without in any event or under any circumstances incurring any liability whatsoever. In the event that the Corporate Trustee and the individual Trustee at the time acting, shall for any reason whatsoever fail to agree as to the termination of the trust in whole or in part with respect to the policies listed in said Schedule B, the decision of such individual Trustee with respect to such termination shall control, and the Corporate Trustee shall be absolutely protected from all consequences arising therefrom." The insurance policies listed in Trust Fund A had a face value of $190,000 and a *22 cash value, on December 31, 1935, of $24,932.14. Those listed in Trust Fund B had a face value of $100,000 and a cash value, on December 31, 1935, of $26,920.57. They were duly transferred to the trustees as provided by the amended trust instrument. The premiums on the policies in Trust Fund A for the calendar years 1936, 1937, and 1938 were paid by decedent as follows: 1936
$ 6,229.00
1937
6,562.50
1938
6,174.00
$18,965.50
The premiums on the policies in Trust Fund B for the calendar years 1936, 1937, and 1938 were paid as follows: 1936
$2,762.82, paid by decedent.
1937
2,286.90, paid by decedent.
1938
1,788.00, paid by decedent.
1938
486.20, paid by decedent's wife.
The decident paid a total of $16,811.40 as premiums on the policies of insurance in Trust Funds A and B during the two years immediately preceding his death, said premiums constituting further gifts to said Trust Funds A and B. By direction of the trustees, all dividends on policies of insurance in Trust Funds A and B which were not paid up during the years 1936, 1937, 1938, and the period from January 1 to January 18, 1939, were applied by the insurance companies in reduction of the premiums *23 due upon said policies. Such dividends amounted to $5,240.24. By direction of the trustees, all dividends on the paid up policies of insurance in Trust Funds A and B were retained and accumulated by the insurance companies for said trusts during the years 1936, 1937, 1938, and the period from January 1 to January 18, 1939. The amount of such dividends was $1,015.94. A policy of insurance in the face amount of $2,500 held in Trust Fund B became fully paid up in 1937 and the proceeds of $2,551.88, including accumulated dividends of $51.88 were paid over by the trustees to the decedent on May 17, 1937 in the exercise by the trustees of their right to terminate the trust in whole or in part conferred by Article Seventh of the amended agreement. The proceeds of the insurance policies received by the trustees were $199,829.09 in Trust Fund A and $100,679.60 in Trust Fund B. The trustees have carried out and executed the provisions of the original and amended trust agreements according to their terms. The estate tax return was filed with the collector of internal revenue for the fifth district of New Jersey, Newark, New Jersey. As stipulated, the transfer by decedent to the trustees *24 of the policies of insurance in Trust Funds A and B were not made in contemplation of death within the meaning of section 302 (c) of the Revenue Act of 1926 as amended. The premiums paid on the policies by decedent during the two years immediately preceding his death, and amounting to $16,811.40, were not transfers made in contemplation of death within the meaning of section 302 (c) of the Revenue Act of the Revenue Act of 1926 as amended. Opinion TYSON, Judge: The respondent makes no contention that the value of the proceeds of the policies of insurance should be included in decedent's gross estate under section 302 (g) of the Revenue Act of 1926 as amended. He presents only two theories upon which he bases his contention that the value of the proceeds of the policies of insurance transferred by decedent to the trust should be included in decedent's gross estate. The first theory, upon which there is but brief discussion by respondent, is that decedent retained an interest in the insurance policies transferred to trust funds A and B which was not terminated until his death and that the value of the corpus of such trust funds at that time is therefore includible in his gross estate *25 under section 302 (c) of the Revenue Act of 1926 as amended, [1] and the doctrine of and . This theory is apparently based upon the premise that because of the remote contingency of decedent's surviving the beneficiaries specified in the trust including "those persons who would inherit property from the Settlor under the New York laws" in case of intestacy as provided in paragraphs A III. of Trust Fund A and B III. of Trust Fund B, decedent had an interest, at his death in the trust estate; or, in other words, that by reason of such contingencies the decedent had a possibility of regaining, prior to his death, the property transferred to the two trust funds A and B. *26 In , the grantor created an irrevocable trust reserving to himself the income for life, then to his wife, and upon the death of the survivor the corpus was to be divided into as many parts as there were surviving children of grantor and his wife, together with one equal part for each child then dead but having spouse or issue surviving. The trust instrument provided that if all children of the grantor and wife predeceased grantor and wife leaving neither spouse nor issue surviving grantor and his wife, all trust property should, on the death of the survivor of the grantor and his wife pass absolutely "to the then surviving next of kin of the grantor in the shares provided by the laws of New Jersey relating to the disposition of personal property in case of intestacy." The contention of the Commissioner there, as here, was that because the grantor had a possibility of regaining, prior to his death, the property transferred by him in trust, the transfer was intended to take effect in possession or enjoyment at or after his death. In deciding against this contention the Court said: Upon the *27 estates set up by the indenture of the case at bar, if the grantor had survived his wife, his children, their respective spouses, and their issue, and his own next of kin, the corpus of the trust would have reverted to him * * * by reason of the failure of the trust. In either event the trust would have returned to him not by specific words contained in the indenture, but by failure of the trust. * * * No inter vivos trust can ever be made that would not be includible in the grantor's estate for the purpose of taxation if the petitioner's [Commissioner's] view prevails. In the case at bar the grantor did not provide any string or tie in the instrument whereby he could pull the res back to him or invade the corpus. * * * We think that the fact of importance in the case at bar is that the grantor during his lifetime disposed of his interests in the corpus of the trust as well as any man could. [Brackets supplied.] The decedent as grantor in the trust instrument here involved could never, under the terms of the trust instrument, have regained any part of the corpus of trust fund A, which was for the benefit of the children, except by failure of the trust through the death of a *28 child without living descendants, the absence of then living descendants of decedent, the death of decedent's brother, and the death of "all those persons who would inherit property from the Settlor under the New York laws" in case of the intestacy of decedent. Neither could the decedent as grantor ever have regained any part of the corpus of trust fund B, which was for the benefit of his wife, except by failure of the trust through the death of the wife with no descendant of decedent then living, the death of the brother of decedent, and the death of all those who would inherit from decedent under New York laws in case of his intestacy. In all material respects the facts here parallel those in the Kellogg case, although the state law there considered was that of New Jersey instead of, as here, that of New York. There is no material difference between the two laws as affects their application to the facts in the respective cases. We think it can be here said, as was said in the Kellogg case, that the decedent as grantor of the trust "did not provide any string or tie in the instrument whereby he could pull the res back to him or invade the corpus" and "that the grantor during *29 his lifetime disposed of his interests in the corpus of the trust as well as any man could". We think it also may be said here, as was said in the case of , where the situation presented was somewhat similar to the one presented here: * * * Indeed, the contingent reversionary interest was present by operation of law, even had the settlor made no mention of it, from the very nature of the unavoidable circumstances. The possibility of reverter arbitrarily attached despite the settlor's complete cession of any interest in or control over the properties. It did not attach, however, in furtherance or effectuation of any intent or desire on his part, as evidenced by his transfers. In our opinion, the holdings in the Kellogg and Lloyd cases are controlling here and we consequently hold that the value of trust funds A and B at the time of decedent's death is not includible in his gross estate within the meaning of section 302 (c), supra. See also , (on appeal C.C.A. 2d Cir. [1]); ; *30 ; , (on appeal C.C.A. 2d Cir. [2]) But, if we have misconceived the premise upon which the first theory of respondent is based and its real purport is to the effect that the value of the corpus of the two trust funds A and B should be included in the gross estate of the decedent because of the possible transmission of the corpus to those persons who would inherit decedent's property under the New York law, no other answer is necessary than to say that such transmission was dependent not upon decedent's death but upon the deaths of intermediary beneficiaries who were living at the date of decedent's death, as shown in the stipulation of facts. . The second theory of respondent is that under paragraphs A I. and B I. of Article First of the trust instrument as amended the trustees were specifically directed to apply the trust *31 income to the use of the wife and children of the decedent with the result that under the doctrine of , such income was to be applied in discharge of the decedent's marital and parental obligations, and that, consequently, under the doctrine of , cert. denied, , the corpus of the trusts is properly includible in the decedent's gross estate under section 302 (c), supra. This theory ignores the fact that there were provisions of the trust instrument as amended relative to the application of the income from the insurance policies other than those contained in the paragraphs relied upon by respondent. Those other provisions are as follows: From and after the assignment to it of each policy of insurance * * * said Trustee shall have, with respect to such policy, or any paid-up additional insurance purchased with annual dividends thereon, or any paid-up additional insurance * * * the sole right to exercise any and all of the benefits, rights, options and privileges of whatsoever kind *32 appertaining to such policy, and may exercise the same, * * * at such times and in such manner as it may in it absolute discretion from time to time deem advisable, including * * * the right * * * (3) to direct the disposition of the annual dividends on such policy. The Trustee shall direct that the dividends on such policies as are not fully paid up, be applied in reduction of the premiums on such policies. [Italics supplied.] Pursuant to such authority and direction the trustee applied all dividends, totalling $5,240.24, on policies not paid up in reduction of premiums and directed the insurance companies to retain and accumulate all the other dividends on paid up policies, totalling $1,015.94. The parties agreed that the trustee in doing so acted within its powers, since they stipulated that "The Trustees have carried out and executed the provisions of Exhibits 1 and 3 [being the trust instruments] pursuant to their terms." The trust corpus of trust funds A and B consisted at the time of the execution of the trust instrument as amended in 1935 merely of insurance policies, all of which so remained as the sole corpus until the death of decedent, except one policy for $2,500 *33 in trust fund B which became fully paid up in 1937, whereupon, under its terms, the trustees became entitled to the proceeds and under their power to terminate the trust in whole or in part, the proceeds of the policy were paid over, in that year, to the decedent. The remaining policies, whether they were paid up or not were payable only upon the death of decedent. Under the terms and conditions of the policies there could have been no income derived therefrom, during the life of decedent, except dividends, and under the provision of the trust instrument as amended, and quoted just above, the trustees were required to apply such dividends as were received on policies not fully paid up in reduction of the premiums on such policies, which the trustees did in the amount of $5,240.44. Such application would necessarily leave no income from that source which could be required to be paid to the use of decedent's wife and children, and the doctrine of , is obviously not apposite. Neither would that doctrine have any application to the income received as dividends on paid up policies with regard to which *34 character of policy the trustees, under the provision of the trust instrument as amended just above quoted, had "the right * * * to direct the disposition of the annual dividends", which they did by directing the insurance companies to accumulate the dividends on such policies in the amount of $1,015.94. The exercise of such a right to the application of the dividends received on paid up policies being discretionary in the trustees is, as it affects the inclusion of the proceeds of such policies in the gross estate of decedent under section 302 (c), supra, governed by the doctrine of ; affirmed, . The application of the dividends on policies not fully paid up in reduction of premiums on the policies was clearly for the protection and preservation of the corpus of the estate and not in discharge of any legal obligation of the decedent to maintain or support his wife or minor children. The application of the dividends on the paid up policies was obviously to increase the value of the corpus of the estate and also was not in discharge of any legal obligation of *35 the decedent to maintain or support his wife or minor children. The second theory of respondent is untenable. While respondent has stipulated that the transfer of the policies in trust on December 31, 1935 was not a transfer "in contemplation of death", he, nevertheless, makes the contention, based upon the alternative issue first raised in his answer filed at the hearing, that premiums totalling $16,811.40 paid by decedent on such policies during 1937 and 1938, the two years preceding his death, were transfers made "in contemplation of death" by way of gifts which it was stipulated constituted gifts to trust funds A and B. The record shows that decedent also paid premiums on the policies, totalling $8,991.82, during the year 1936, but no such contention is made as to those payments, apparently because they were not paid within the two year period and no presumption of their having been paid in contemplation of death attaches. Decedent died on January 18, 1939, at the age of approximately 51 years, as a result of heart failure and "artery-sclerosis." He was stricken shortly before his death and there is no evidence of prior illness. Fifteen of the policies were issued decedent prior *36 to September 15, 1932, the date of the creation of the original trust constituting the Trust Company custodian of the trust policies and trustee of the proceeds thereof which might be realized at the death of the petitioner. One of the policies was issued in 1933 and was included with the other policies in those held by the Trust Company as custodian. In all these policies the decedent alone was obligated to pay the premiums in order to keep the policies in effect, and we think it fair to assume that those premiums were paid by the decedent in years prior to the amendment of the trust in 1935 and while the policies were held by the Trust Company as custodian under the original trust instrument of September 15, 1932, since the original trust instrument provided that the Trust Company as custodian, was "to hold the [policies] subject to the order of the Settlor, with no obligations with respect to the payment of the premiums," and since all premiums necessary to keep the policies in force were paid for that period as shown by the fact that the proceeds of the policies were all collected on the death of the decedent. It also appears that premiums other than those involved were paid by *37 decedent, in the total amount of $8,991.82 in 1936, after the amendment of the trust instrument in 1935. It would thus seem that the premiums involved were paid by decedent through transfers by way of gifts to the trust in pursuance of a well established custom of decedent in making such gifts and with the obvious intention and purpose of preserving the corpus of the trust. Under these circumstances we think that what was said with respect to a series of gifts in , applies here, to-wit: * * * All of the gifts here in question were, in our opinion, of the same character and made for the same reasons influencing the making of many earlier gifts which were not and are not even asserted here to have been made by decedent in contemplation of death. See also . Moreover, we think that without regard to the question of whether or not the premiums involved were paid by decedent in accordance with a well established custom as above set out, it is obvious from all the facts of record that the premiums in question were paid by him for the sole purpose and *38 with the sole intention of preserving the corpus of the trust through the payment of the premiums which the trustees, under the terms of the trust instrument as amended, could make only to the extent of the application thereon of the dividends on the policies, or by borrowing on the policies, neither of which they did with regard to the premiums paid by the decedent. We conclude that in paying the premiums here involved, the decedent was actuated solely by the intention of preserving the integrity of the trust corpus, and not by any intention or purpose to make such payments as transfers "in contemplation of death" within the meaning of section 302 (c) supra; and in conformity with such conclusion we have found as a fact that the premiums paid by decedent during the two years immediately preceding his death were not transfers made in contemplation of death within the meaning of that section. Decision will be entered under Rule 50. Footnotes
1. Revenue Act of 1926, as amended: Section 302 (c) and (g) of the Revenue Act of 1926, as amended by section 404 of the Revenue Act of 1934, provides as follows: "Sec. 302 (as amended by section 404 of the Revenue Act of 1934). The value of the gross estate of the decedent shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated, except real property situated outside the United States * * * "(c) (as amended by Joint Resolution of March 3, 1931, Public, No. 131, Seventy-first Congress, and by section 803 (a) of the Revenue Act of 1932). To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, or of which he has at any time made a transfer, by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death (1) the possession or enjoyment of, or the right to the income from, the property, or (2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom; except in case of a bona fide sale for an adequate and full consideration in money or money's worth. Any transfer of a material part of his property in the nature of a final disposition or distribution thereof, made by the decedent within two years prior to his death without such consideration, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this title; * * * * *
"↩
1. Tax Court reversed, . ↩
2. Petition for review dismissed nolle pros, ↩ September 26, 1945.